Elrita FULLER and Harold
Fuller, Appellants,

v.

Alfred A. BUHROW, Appellee.

No. 63386.

Supreme Court of Iowa.

May 21, 1980.

Don C. Wilson and James C. Wilson of
Wilson, Hall, Wilson & Craig, Eldora, for
appellants.

James E. Gritzner and David J. Dutton of
Mosier, Thomas, Beatty, Dutton, Braun &
Staack, Waterloo, for appellee.

ALLBEE, Justice.

By this appeal in advance of final judgment, plaintiffs Elrita and Harold Fuller challenge the validity of the defense of contributory negligence as a bar to both the personal injury claim of Elrita and the loss of consortium claim of Harold.

Plaintiffs' original petition alleged that on January 8, 1977, defendant Alfred A. Buhrow drove his car into Elrita while she was a pedestrian on Walnut Street in Cedar Falls. For the injuries she sustained, Elrita claimed damages for past and future pain, suffering and disability; lost earnings; and hospital, medical and travel expenses. In a separate division, Elrita's husband Harold claimed damages for the past and future loss of consortium of his wife.

Defendant asserted the contributory negligence of Elrita as an affirmative defense to both Elrita's and Harold's claims in an amendment to his answer, which accompanied an application for leave to amend. In a filed resistance to defendant's application to amend and in an alternative motion to strike the contributory negligence defense, plaintiffs raised two basic arguments. First, with regard to both plaintiffs' claims, they contended that the doctrine of contributory negligence should be abrogated and replaced by the doctrine of comparative negligence. Secondly, with regard to only Harold's claim, they asserted that the contributory negligence of the injured spouse

constitutes no defense to an action for loss of consortium.

Trial court granted defendant leave to amend his answer and overruled plaintiffs' motion to strike. Plaintiffs then sought and obtained permission from this court to appeal that interlocutory ruling under Iowa R.App.P. 2(a). We affirm trial court's rejection of plaintiffs' call to abrogate contributory negligence generally but reverse its failure to strike the defense as to Harold's claim for loss of consortium.

I. *Whether doctrine of contributory negligence should be abrogated and replaced by comparative negligence.*

Plaintiffs did not fully brief this issue because shortly after they filed their motion to strike, this court handed down its decision in *Stewart v. Madison*, 278 N.W.2d 284 (Iowa 1979), which declined to abrogate the doctrine of contributory negligence. Nonetheless, we will briefly comment upon this issue because events which have occurred since that decision have caused us to reflect upon our position.

Our reason for rejecting abolition or modification of the defense of contributory negligence in *Stewart* was two-fold. First, we determined that the matter was best left for the legislature as that body had already enacted provisions in the areas of comparative and contributory negligence and as it has superior means available for gathering and distilling information for what is essentially a policy decision. *Id.* at 295, 296. Secondly, we noted that general agreement of the need for change had not been reached. *Id.* at 295.

Since *Stewart* was decided, the number of states that have adopted comparative negligence has increased to thirty-five, thirty by legislation and five by judicial decision. Sowle & Conkle, *Comparative Negligence Versus the Constitutional Guarantee of Equal Protection: A Hypothetical Judicial Decision*, 1979 Duke L.J. 1083, 1087 n.9. We now consider the desirability for change to be less susceptible to dispute. As the Supreme Court of Michigan stated in its recent decision abrogating contributory negligence,

There is little dispute among legal commentators that the doctrine of contributory negligence has caused substantial injustice since it was first invoked in England in 1809. Of significance in this regard is that almost every common-law jurisdiction outside the United States has discarded contributory negligence and has adopted in its place a more equitable system of comparative negligence. Even in this country, considered the only remaining primary location employing contributory negligence, 32 states and the United States Supreme Court in the case of admiralty law have discarded or rejected it in favor of some form of comparative negligence. This precedent is so compelling that the question before remaining courts and legislatures is not whether but when, how and in what form to follow this lead.

*Placek v. City of Sterling Heights*, 405 Mich. 638, 652–53, 275 N.W.2d 511, 515 (1979) (footnotes omitted); *accord*, Annot., 78 A.L.R.3d 339, 373 (1977) ("[I]t seems to have been generally conceded, at least in theory, that the comparative negligence doctrine is a fairer, more equitable doctrine than that of contributory negligence . . . .")

The primary factor voiced in decisions judicially adopting comparative negligence is that it is the fairer doctrine. For example, *Li v. Yellow Cab Co.*, 13 Cal.3d 804, 811, 119 Cal.Rptr. 858, 863, 532 P.2d 1226, 1231 (1975), commented that the basic objection to contributory negligence is that "in a system in which liability is based on fault, the extent of fault should govern the extent of liability . . . ." Especially disconcerting to the West Virginia Supreme Court of Appeals was the harshness of the "all or nothing" aspect of contributory negligence: "[O]ur system of jurisprudence, while based on concepts of justice and fair play, contains an anomaly in which the slightest negligence of a plaintiff precludes any recovery and thereby excuses the defendant from the consequences of all of his negligence, however great it may be." *Bradley v. Appalachian Power Co.*, 256 S.E.2d 879, 882 (W.Va.1979). Similar views

were expressed earlier by the Florida Supreme Court in *Hoffman v. Jones*, 280 So.2d 431, 437 (Fla.1973):

> The rule of contributory negligence is a harsh one which either places the burden of a loss for which two are responsible upon only one party or relegates to Lady Luck the determination of the damages for which each of two negligent parties will be liable. When the negligence of more than one person contributes to the occurrence of an accident, each should pay the proportion of the total damages he has caused the other party.

Many commentators have also been critical of the contributory negligence doctrine, as opposed to comparative negligence principles. *See, e. g.*, II F. Harper & F. James, *The Law of Torts* §§ 22.1–.3 (1956); W. Prosser, *Handbook of the Law of Torts* § 65, at 417–18, § 67, at 433 (4th ed. 1971); V. Schwartz, *Comparative Negligence* §§ 21.1, .2 (1974); Fleming, *The Supreme Court of California 1974–75—Foreword: Comparative Negligence at Last—By Judicial Choice*, 64 Calif.L.Rev. 239, 241–44 (1976); Haugh, *Comparative Negligence: A Reform Long Overdue*, 49 Or.L.Rev. 38 (1969); Maloney, *From Contributory to Comparative Negligence: A Needed Law Reform*, 11 U.Fla.L.Rev. 135 (1958); Schwartz, *Contributory and Comparative Negligence: A Reappraisal*, 87 Yale L.J. 697 (1978); Turk, *Comparative Negligence on the March*, 28 Chi.-Kent L.Rev. 189, 199–207 (1950); Vargo, *Comparative Fault: A Need for Reform of Indiana Tort Law*, 11 Ind.L.Rev. 829 (1978); Comment, *Comparative Negligence in Arizona*, 1979 Ariz.St. L.J. 581.

■ For the present, we defer consideration of whether these notions of fairness impose upon this court a duty to abrogate contributory negligence. We have indicated in *Stewart* and continue to believe that such a decision and the accompanying formulation, if necessary, of an alternative system, more appropriately rest with the legislature.

II. *Whether the contributory negligence of the injured spouse bars a claim by the other spouse for loss of consortium.*

■ Plaintiffs argue that *Handeland v. Brown*, 216 N.W.2d 574 (Iowa 1974), which held that a child's contributory negligence, not the sole proximate cause of his injury, is not a defense to a parent's claim for "the expense and actual loss of services, companionship and society resulting from injury to or death of a minor child" under Iowa R.Civ.P. 8, dictates that contributory negligence not be a bar to Harold's claim for loss of consortium. We agree.

Our decision in *Handeland* was based on the general principle of tort law that the fact that the negligence of another, not the plaintiff, concurred in producing the injury is no defense to any of those whose negligence proximately caused the injury. Our conclusion there is equally applicable here: "[W]e do not believe any proper basis exists for excluding from the operation of that principle only situations where concurrent proximate negligence of the injured person is pleaded as a defense to the claim of one who holds a legally protected interest in the health or life of such injured person." 216 N.W.2d at 578.

In reaching this conclusion, *Handeland* rejected the rule stated in section 494 of the Restatement (Second) of Torts, which bars a plaintiff from recovering for an invasion of his legally protected interest in the health or life of a third person if that third person would be barred from recovery by his own negligence. While admitting that this is the prevailing rule, we nonetheless analyzed the four bases relied on by courts in applying the rule and found each to be without merit. Those bases, the derivative action theory, the imputed negligence theory, the assignment theory and the well-settled rule theory, have been invoked not only in cases involving parents' claims for damages arising from injury to their children but also in spouses' claims for loss of consortium. *See* Annot., 21 A.L.R.3d 469 (1968). Our analysis in *Handeland* does not logically exclude consortium claims from our disapproval of those theories.

Defendant attempts to distinguish consortium claims from rule 8 claims in various ways. First, he argues that the consortium action arises as a result of a legal relation-

ship between husband and wife while the rule 8 claim arises from the natural relationship of parent and child. We fail to perceive any legal significance that attaches to that distinction, nor is any offered by defendant.

Secondly, defendant contends that a spouse has no separate and distinct damage by virtue of his or her loss of consortium as the injury involved is to a relationship enjoyed by both parties. Thus he would distinguish claims by parents for loss of services by their children, which seek a remedy for damages affecting only the parents. *See Handeland*, 216 N.W.2d at 576 ("A rule 8 claim is brought by parent to redress a wrong done to himself rather another.").

This contention by defendant is contradicted by decisions of this court that have recognized that consortium is a separate property right of each spouse to the marital relationship. *See, e. g., Lampe v. Lagomarcino-Grupe Co.*, 251 Iowa 204, 206, 100 N.W.2d 1, 2 (1959); *Price v. Price*, 91 Iowa 693, 697–98, 60 N.W. 202, 203 (1894). It is "the right of each to the company, co-operation, affection and aid of the other in each conjugal relation." *Acuff v. Schmit*, 248 Iowa 272, 274, 78 N.W.2d 480, 482 (1956). The distinct nature of each spouse's right to consortium is perhaps most clearly evidenced by the fact that either spouse may sue for loss of consortium by means of an alienation of affections action even though the other spouse was a joint tortfeasor. *See id.* at 277, 78 N.W.2d at 483.

We find persuasive on this point the rationale of *Lantis v. Condon*, 95 Cal.App.3d 152, 157, 157 Cal.Rptr. 22, 24 (1979):

> [T]he injury incurred [referring to loss of consortium] can neither be said to have been "parasitic" upon the husband's cause of action nor can it be properly characterized as an injury to the marital unit as a whole. Rather, it is comprised of Anne's own physical, psychological and emotional pain and anguish which results when her husband is negligently injured to the extent that he is no longer capable of providing the love, affection, companionship, comfort or sexual relations concomitant with a normal married life. . . . From the vantage point of the negligent defendant, Anne is simply a foreseeable plaintiff to whom he owes a separate duty of care. . . . If the injury she suffered were a broken leg while riding in a vehicle driven by her contributorily negligent husband, there would be no question but that his contributory negligence would not destroy or mitigate her right to full recovery. . . . There is no reason why injury to her psychological and emotional state should be treated any differently than injury to her physical well being. [Citations omitted.]

A third distinction that defendant asserts is that a rule 8 claim is pecuniary in nature while a claim for loss of consortium is not. In this state consortium damages are limited to compensation for the loss of such intangible elements as company, cooperation, affection and aid. As explained in *Acuff*, 248 Iowa at 274, 78 N.W.2d at 482, we have adopted the "sentimental" view of consortium, rather than the "material" or "practical" view, in which services are an element of damages. *See generally* Annot., 74 A.L.R.3d 805 (1976). *Acuff's* description of our consortium action is verified by this court's interpretations of section 613.15 of the Code and its statutory predecessors as limiting the right of action for damages for medical expenses and loss of services to only the injured spouse or the administrator of his or her estate. *See Egan v. Naylor*, 208 N.W.2d 915, 918 (Iowa 1973); *Woodard v. City of Des Moines*, 182 Iowa 1102, 1106, 165 N.W. 313, 314 (1917); *Jacobson v. Fullerton*, 181 Iowa 1195, 165 N.W. 358 (1917); *Rose v. City of Fort Dodge*, 180 Iowa 331, 339, 155 N.W. 170, 173 (1915); *Fisher v. Ellston*, 174 Iowa 364, 372, 156 N.W. 422, 425 (1916); *Lane v. Steiniger*, 174 Iowa 317, 156 N.W. 375 (1916).

Rule 8, however, also provides for compensation for the loss of such intangible elements as the companionship and society of a child. Those could well be the only damage elements sought in some rule 8 claims. Thus, the asserted distinction is not one that uniformly obtains. Additionally,

we discern no meaningful significance related to the distinction. Surely the intangible losses of companionship and society of one's spouse or child are just as real and worthy of compensation as the loss of services of a child or expenses paid as a result of the child's injury or death.

Finally, defendant argues that the rule of the Restatement is the "fairer" one, at least in consortium cases. In support, he cites *Ross v. Cuthbert,* 239 Or. 429, 435–36, 397 P.2d 529, 531–32 (1964), which indicates that permitting one's spouse to enrich the family treasury by recovering consortium damages when the injured spouse is barred from recovery by his or her own negligence defeats the basis of the contributory negligence doctrine, *i. e.,* keeping a person from profiting by his own negligence. This unjust family enrichment argument, as articulated by *Ross,* was found in *Handeland* to have been "contrary to reasoning long articulated in our own cases and the restatement itself." 216 N.W.2d at 578.

■ There is no reason for us to alter our view in consortium cases. On the contrary, the unjust enrichment theory is less persuasive in cases of this sort than in rule 8 cases. As the dissent in *Handeland* noted, the defendant in a rule 8 suit will be prevented from obtaining contribution from the contributorily negligent youth because of the family immunity rule. *Id.* at 579. There is no such impediment to defendants liable for consortium claims. *See Shook v. Crabb,* 281 N.W.2d 616 (Iowa 1979) (abrogating interspousal immunity doctrine).

Defendant also contends that support for the superior fairness of the Restatement rule is found in its prevalence. We disagree. Certainly not all minority views are the less fair views; nor are they all destined to always be minority views. In this regard, it is noteworthy that since the *Handeland* decision, two additional courts have determined that claims for consortium are not derivative to the injured spouses's personal injury claim and thus are not affected by the injured spouse's contributory negligence. *Macon v. Seaward Construction Co.,* 555 F.2d 1, 2–3 (1st Cir. 1977)

(interpreting New Hampshire law); *Lantis v. Condon,* 95 Cal.App.3d 152, 155–159, 157 Cal.Rptr. 22, 23–26 (1979). To deny a consortium claim because of the injured spouse's negligence would, in fact, create a new kind of unfairness. It would force the plaintiff, who was free from fault, to assume the full burden of damages caused by the negligence of others. It would also unjustly permit the negligent tortfeasor to escape liability altogether merely because of the fortuitous negligence of another. See *Lantis,* 95 Cal.App.3d at 158–59, 157 Cal.Rptr. at 25–26.

Consequently, we decline to except consortium claims from the rule announced in *Handeland* on grounds of fairness or any of the other grounds asserted by defendant. We hold that the contributory negligence of an injured spouse which is not the sole proximate cause of that spouse's injury does not bar a claim by the other spouse for loss of consortium.

ORDER VACATED IN PART AND AFFIRMED IN PART; CASE REMANDED.

LARSON, J., concurs.

HARRIS, J., joined by REES, J., concurs specially in Division I and concurs in Division II.

UHLENHOPP, J., concurs specially in Division I and dissents from Division II.

McCORMICK, J., joined by REYNOLDSON, C. J., dissents from Division I and concurs in Division II.

McGIVERIN, J., joined by LeGRAND, J., concurs in result in Division I and dissents from Division II.

HARRIS, Justice (concurring specially).

I concur in the result in division I of the majority opinion because and on the basis of our holding in *Stewart v. Madison,* 278 N.W.2d 284, 295, 296 (Iowa 1979). On stare decisis grounds that opinion is both sufficient and compelling to warrant our refusal to adopt the comparative negligence doctrine. I do not subscribe to the entreaties set forth in the majority opinion and direct-

ed to the legislature suggesting that we will adopt the doctrine of comparative negligence if the legislature fails to do so.

The policy arguments for the doctrine do not demand that we renounce our unanimous refusal a year ago to change our long-established rule. In discharging our law-giving function this court has an obvious duty to adopt the principles which best serve the public interest. But on a great many policy questions, and on countless other relatively close questions, the public has an overriding need for at least a minimum of predictability and certainty in the law. This need should take precedence in the pending appeal.

The suggestion that we abandon the doctrine of contributory negligence in favor of comparative negligence seems to appeal to the private sense of abstract justice of many, perhaps most, of the members of this court. But it does not seem to me that the question is so clear or one-sided as to impel that we direct a complete change in this important rule or that we try to direct the legislative branch of government to do so. Too often such a change of a well-understood and established principle is wrought at the expense of an orderly trial process. In the myriad of tort suits pending in Iowa trial court must each judge undertake to predict when the majority's patience would be exhausted? Would it be exhausted if a bill to adopt comparative negligence were defeated in the general assembly? Would it be exhausted if a bill were to be filed but not considered? Would it be exhausted if the legislature took the trouble to codify our present rule of contributory negligence?

Any real or imagined advantage in a rule of comparative negligence is not worth the cost. I therefore concur in adhering to our holding in *Stewart v. Madison* and disassociate myself from the other expressions in division I. I would leave it entirely up to the legislature to decide, not only when, but if, the doctrine of comparative negligence should be adopted.

II. I agree with the majority that our decision in *Handeland v. Brown*, 216

N.W.2d 574, 578–79 (Iowa 1974), controls the question. I concur in division II.

REES, J., joins this special concurrence.

UHLENHOPP, Justice (concurring specially in part, dissenting in part).

I. While I favor the comparative negligence rule, I think that if it comes it should be ushered in by the General Assembly. This will allow substantial input by the bar and other interested groups, individually and through committees. The General Assembly is in a position to develop and adopt a comprehensive statute which not only makes the basic transition but also treats other vexing problems that accompany comparative negligence, such as those relating to contribution and indemnity. On the other hand, if the General Assembly decides to retain contributory negligence the judiciary should not "overrule" the legislature and force comparative negligence on the state. This is not a constitutional issue on which the General Assembly has no choice; it is a policy issue. I would therefore simply adhere to our pronouncement in *Stewart v. Madison*, 278 N.W.2d 284 (Iowa 1979).

II. Under the contributory negligence doctrine I dissent from allowing loss of consortium damages of which the negligence of the injured spouse was a proximate cause, for reasons similar to those stated in my dissenting opinion in *Handeland v. Brown*, 216 N.W.2d 574 (Iowa 1974).

McGIVERIN, Justice (concurring in result in part, dissenting in part).

I concur in the result of Division I of the majority opinion and would hold to what we said in *Stewart v. Madison*, 278 N.W.2d 284, 296 (Iowa 1979), that adoption of the comparative negligence theory is a matter which is better handled through the legislative process.

I dissent as to Division II for the reasons stated in the dissent by Justice Uhlenhopp in the present case.

LeGRAND, J., joins in this concurrence in result in part and dissent in part.

McCORMICK, Justice (dissenting in part).

I concur in division II but dissent from division I.

The doctrine of contributory negligence was established by the court in fulfilling its institutional responsibility to declare the common law. This institutional responsibility includes the duty to abandon precedent when it is discredited by experience. Common-law principles are neither immutable nor infallible, and the genius of the system is its capacity for growth and adaptation. *See Handeland v. Brown*, 216 N.W.2d 574, 577 (Iowa 1974). We have previously refused to perpetuate obsolete judge-made doctrine merely for the sake of avoiding a departure from the past. *See Kersten Co., Inc. v. Department of Social Services*, 207 N.W.2d 117, 121 (Iowa 1973).

Today the court recognizes that the doctrine of comparative negligence is superior to that of contributory negligence. Respected authorities who have analyzed and studied the subject for years have come to a virtually unanimous conclusion that for reasons of fairness and justice the comparative negligence doctrine should be adopted. We have the example and experience of a growing majority of states to guide us in making the change. We have an advisory committee to assist with any necessary rule revisions.

If the legislature wishes to disapprove our common-law decisions and rule changes, it has the right to do so, but the mere existence of that right should not chill the court's initiative in making the changes. We ought to put our own house in order. It is neither necessary nor appropriate to defer to the legislature in the first instance.

I would adopt the doctrine of comparative negligence for application in this case and prospectively.

REYNOLDSON, C. J., joins this dissent in part.