Elizabeth M. SCHWENNEN, Executor of the Estate of John G. Schwennen, Jr., Deceased, Appellee,

v.

William T. ABELL, Appellant,

and

Floyd County, Iowa, Appellee.

William T. ABELL, Cross–Petitioner,

v.

John Karl SCHWENNEN, Defendant to Cross–Petition.

Mary E. ABELL, Appellee,

v.

Elizabeth M. SCHWENNEN, Executor of the Estate of John G. Schwennen, Jr., Deceased; John Karl Schwennen, and Floyd County, Iowa, Appellees.

No. 86–1674.

Supreme Court of Iowa.

Sept. 21, 1988.

Larry L. Anfinson of Randall, Anfinson & Luce, Waterloo, for appellant William T. Abell.

Judith O'Donohoe of Erb, O'Donohoe & Frye, Charles City, for appellee Mary E. Abell.

Donald H. Gloe of Miller, Pearson, Gloe, Burns, Beatty & Cowie, P.C., Decorah, for appellees Schwennens.

CARTER, Justice.

This case comes to us on multiple appeals following entry of judgments in consolidated automobile negligence actions. The issues raised all relate to the effect of an injured spouse's fault in the trial of the other spouse's claim for loss of consortium. For purposes of discussion we will refer to the claimant spouse as the deprived spouse.

Mary E. Abell's husband, William, was injured when an automobile he was driving collided with another automobile driven by John Karl Schwennen and owned by John's father, John G. Schwennen, Jr. This accident occurred on August 9, 1982. The elder Schwennen was a passenger in the automobile and was killed in the collision.

John G. Schwennen, Jr.'s estate brought an action against William based on the latter's alleged negligence in causing the collision. William counterclaimed seeking recovery for the injuries which he sustained in the crash. He alleged that John Karl Schwennen was negligent in causing the collision and that the Schwennen estate was vicariously liable under Iowa Code section 321.493 (1981).

On March 3, 1983, Mary brought an independent action against the Schwennen estate, John Karl Schwennen, and Floyd County, Iowa, seeking to recover for loss of aid, services, affection, society, and companionship as a result of injuries sustained by William in the collision. This action was consolidated with the other pending action. Shortly prior to trial of the consolidated actions, Mary amended her petition to include William as an additional defendant against whom her loss of consortium claim was made.

In the trial of Mary's consortium claim, the jury found that she had been damaged in the amount of $85,000. It apportioned fault among the defendants as follows: William, sixty-three percent; the Schwennen defendants, twenty-seven percent;[1] and Floyd County, ten percent. Because the fault apportioned to William was more than fifty percent of the aggregate, judgment was entered against him for the full amount of the verdict. The other defendants were adjudged only to be liable in proportion to the share of fault ascribed to them.

I. *Liability of Injured Spouse for Loss of Consortium Claim by Deprived Spouse.*

■ The judgment of the district court was entered on October 20, 1986. On December 17, 1986, this court filed its opinion in *McIntosh v. Barr*, 397 N.W.2d 516 (Iowa 1986). We held that, although the marital consortium interest is legally protected as against third parties, no action lies between the deprived spouse and the injured spouse *inter se*. William urges that under the *McIntosh* holding Mary's judgment against him cannot be permitted to stand. The appellees concede that this issue was properly preserved by William in the district court and suggest no reason why *McIntosh* does not require a reversal of the judgment. Consequently, we must reverse Mary's judgment against William on her loss of consortium claim.

II. *The Effect of William's Fault on the Liability to be Assessed Against the Remaining Defendants.*

Although Mary virtually concedes that her judgment against William must fall, she has sought to protect herself against that eventuality by cross-appealing from her judgment against the Schwennen defendants and Floyd County.[2] On this cross-appeal she argues that if she had no legal claim against William then his fault was improperly included in the apportionment of aggregate fault among the parties. Applying this premise, she would interpolate the fault apportionment made by the jury so as to ascribe twenty-seven thirty-sevenths of the aggregate fault to the Schwennen defendants and ten thirty-sevenths to Floyd County.

The Schwennen defendants urge that Mary did not assert this theory in the district court and may not now make such claim on appeal. They also argue that, in any event, in the trial of a loss of consortium claim involving comparative fault, the deprived spouse's claim should be reduced by the fault apportioned to the injured spouse.

A. *Applicability of Iowa Code chapter 668.* At the outset we must consider the extent to which the comparative fault legislation presently contained in Iowa Code chapter 668 applies to the present case. The action was filed before July 1, 1984, but was tried after that date. The effective date of this legislation was established in the bill enacting it which provides as follows:

This Act, except for section 4, applies to all cases filed on or after July 1, 1984. Section 4 of this Act applies to all cases tried on or after July 1, 1984.

1984 Iowa Acts Ch. 1293, § 15.

The legislation in question deals with three primary topics: (1) the effect of con-

---

1. Because the liability of the estate of John G. Schwennen, Jr. was vicarious based on Iowa Code § 321.493 (owner's liability), the two Schwennen defendants were treated as a single party as permitted by Iowa Code § 668.3(2)(b).

2. Floyd County is no longer a party to the appeal having settled Mary's claims against it. Its fault, however, is still relevant to the issues.

tributory fault in reducing or barring the claimant's right of recovery against all defendants, (2) the elimination of joint and several liability for certain defendants who bear less than fifty percent of the aggregate fault, and (3) special rules concerning the right of contribution and enforcement of contribution among joint tort-feasors. Only the second topic, *i.e.*, the new joint and several liability rule, was made retroactively applicable. The statute expressly negates any retroactive applicability to the first and third topics.

■ Because of this selective applicability of chapter 668, the statutory provisions which operate to reduce or bar plaintiff's right of recovery against all defendants do not apply. That aspect of plaintiff's claim is still governed by the common-law rules established in *Goetzman v. Wichern*, 327 N.W.2d 742, 754 (Iowa 1983). The chapter 668 statutory scheme may indirectly affect the extent of plaintiff's recovery against particular defendants, however, through the application of section 668.4.

B. *Effect of injured spouse's fault on deprived spouse's claim under Goetzman.* Because the common-law concept of comparative negligence recognized in *Goetzman* is applicable to defendants' attempt to secure a reduction of Mary's claim against all defendants based on contributory fault, we must examine the scope of that holding. Such examination reveals that the decision only supplanted prior law in those instances where "contributory negligence has previously been a complete defense." *Goetzman*, 327 N.W.2d at 754.

If Mary had been guilty of some negligence which proximately caused William's injury, this would have constituted a complete defense to her claim under the law which antedated *Goetzman*. No contention has been made, however, that Mary was personally guilty of such negligence. William's negligence would not have constituted a complete defense to Mary's claim under pre-*Goetzman* law.

■ In *Fuller v. Buhrow*, 292 N.W.2d 672, 675–76 (Iowa 1980), we held that the contributory fault of an injured spouse does not provide a defense to a loss of consortium claim brought on behalf of the deprived spouse against a third-party tortfeasor. At that time we fully considered conflicting lines of authority contained in decisions from other jurisdictions and our own prior decision in *Ziegler v. United States Gypsum Co.*, 251 Iowa 714, 717, 102 N.W.2d 152, 153 (1960). We opted for a rule which recognizes "the negligence of another, not the plaintiff, [having] concurred in producing the injury is no defense to any of those whose negligence proximately caused the injury." *Fuller*, 292 N.W.2d at 674.

We are unable to discern any persuasive reasons why a departure from the position established in *Fuller* is indicated from the fact that this jurisdiction has now abandoned the contributory negligence defense in favor of a comparative fault concept. The policy issues underlying the effect of the injured spouse's fault on the deprived spouse's loss of consortium claim are, we believe, substantially the same in either situation. The policy issue is a simple one. Why should innocent parties who have suffered loss have their right of recovery diminished as a result of the acts of another party whose fault is not imputed to them under established common-law or statutory rules?

■ Cases cited by the Schwennen defendants which reach a contrary result have characterized the deprived spouse's cause of action as derivative of the injured spouse's claim. *See Nelson v. Busby*, 246 Ark. 247, 255, 437 S.W.2d 799, 803 (1969); *Gates v. Foley*, 247 So.2d 40, 45 (Fla.1971); *White v. Lunder*, 66 Wis.2d 563, 574, 225 N.W.2d 442, 449 (1975). We rejected this characterization of a loss of consortium claim in *Fuller* and in the more recent decision of *Madison v. Colby*, 348 N.W.2d 202, 208–09 (Iowa 1984).

Other comparative fault jurisdictions which have refused to characterize a loss of consortium action as derivative include *Macon v. Seaward Construction Co.*, 555 F.2d 1, 2 (1st Cir.1977) (applying New Hampshire law); *Lantis v. Condon*, 95 Cal. App.3d 152, 157, 157 Cal.Rptr. 22, 24 (1979);

*Feltch v. General Rental Co.*, 383 Mass. 603, 608, 421 N.E.2d 67, 70–71 (1981); *Christie v. Maxwell*, 40 Wash.App. 40, 44, 696 P.2d 1256, 1258 (1985). The courts which rendered the latter decisions have refused to reduce the deprived spouse's recovery as a result of fault attributable to the injured spouse.

■ The Schwennen defendants suggest there is a potential for unjust enrichment of a single economic unit if the *Fuller* principles are followed. The Washington court in *Christie v. Maxwell* considered such an argument and rejected it for the following reasons:

> [T]he injury incurred can neither be said to have been "parasitic" upon the [injured spouse's] cause of action nor can it be properly characterized as an injury to the marital unit as a whole. Rather, it is comprised of [the deprived spouse's] own physical, psychological and emotional pain and anguish which results when her [spouse] is negligently injured.... From the vantage point of the negligent defendant, [the deprived spouse] is simply a foreseeable plaintiff to whom he owes a separate duty of care.

*Christie*, 40 Wash.App. at 47, 696 P.2d at 1260.

We, too, find the suggestion of unjust enrichment to be untenable in view of our emphatic confirmation of the deprived spouse's individual ownership of the loss of consortium claim. *See Madison*, 348 N.W. 2d at 208–09. It has long been the law of this state that, unless one spouse assigns that party's separate chose in action to the other spouse, any recovery realized is the separate property of the owner of the chose. *King v. Gottschalk*, 21 Iowa 512, 513–14 (1866); *see also* Iowa Code § 597.2, .19 (1983).

■ In promulgating Iowa Uniform Jury Instruction 3.13 in November 1984, the committee established a position which is consistent with the views which we have expressed. That instruction, which is designed to apply in *Goetzman* situations, provides that there is no imputation of fault to the deprived spouse as a result of acts by the injured spouse. We conclude this correctly expresses the law applicable to Mary's claim in the present case.

C. *Whether section 668.4 permits apportionment of fault to injured spouse so as to reduce liability of third-party tortfeasors.* We next consider whether, as appellees suggest, Iowa Code section 668.4 (1985) allows a portion of the aggregate causal fault to be allocated to William thereby reducing the amount of fault to be apportioned among the remaining defendants. Section 668.4 is applicable to this action. We held in *Reese v. Werts Corp.*, 379 N.W.2d 1, 4 (Iowa 1985), that this statutory rule with respect to joint and several liability shall "have the same meaning and effect [in cases filed before July 1, 1984] that it will have in future cases." In both *Reese* and *Baldwin v. City of Waterloo*, 372 N.W.2d 486, 493 (Iowa 1985), we recognized that in such cases it is also necessary to resort to other relevant statutes contained in chapter 668 in order to determine the joint and several liability issues in accordance with the statutory scheme. We are convinced, however, that the statutory scheme does not lead to the result for which the Schwennen defendants contend.

■ We established in *Reese* that in determining the apportionment of fault among parties and released parties pursuant to section 668.3(2)(b) only parties "whose fault toward the claimant is an issue" should be included in the total aggregate of causal fault. *Reese*, 379 N.W.2d at 6. The fault of parties toward the claimant which has not been placed in issue cannot be considered. *Peterson v. Pittman*, 391 N.W.2d 235, 238 (Iowa 1986). Similarly, fault of parties placed in issue in the pleadings which is ultimately determined to be legally insufficient to support the claim may not be considered in the aggregate fault apportionment. *Payne Plumbing & Heating Co. v. Bob McKiness Excavating & Grading*, 382 N.W.2d 156, 158–60 (Iowa 1986); *Reese*, 379 N.W.2d at 6.

Within this statutory scheme, this occurs when the claimant bases his or her claim against that defendant on some aspect of

fault which falls within the statutory definition and which is legally sufficient to support the claim. With respect to a third-party defendant, this occurs when a defendant bases the third-party claim in whole or in part on some fault of the third-party defendant toward the claimant which would be legally sufficient to render that party liable upon the same indivisible claim for the same injury. *See Reese,* 379 N.W.2d at 6; Iowa Code § 668.5(1).

■ In the present case, Mary did place William's fault toward her in issue by claiming directly against him. As we have determined earlier in this opinion, however, her claim based on such fault is not legally sustainable under the *McIntosh* holding. The Schwennen defendants also placed William's fault toward Mary in issue in a third-party claim for contribution. That claim is also lacking in legal efficacy as a result of *McIntosh.* Because no legally sustainable theory of recovery may be predicated on William's fault toward Mary, his fault should not have played a role in the apportionment of aggregate fault under section 668.3(2)(b).

■ The present action involves consolidated claims brought by multiple claimants. If, in actions involving multiple claimants, the fault of one claimant is not a legally viable issue in determining the rights of another claimant, separate verdict forms must be utilized to obtain a proper apportionment of causal fault as to each claimant.[3] Obviously, the trial court did not utilize this method in the present case because it believed that Mary's claim against William was legally sustainable. The consequence of being wrong on that issue, however, is that the percentage of fault apportioned to William has distorted the percentage of fault properly to be ascribed to the Schwennen defendants and Floyd County. The combined fault of the latter defendants should have totaled 100% of the causal fault involved in Mary's claim.

D. *Waiver of right to urge issue on appeal by taking inconsistent position in the trial court.* We next consider the Schwennen defendants' contention that, because Mary claimed in the district court that William should be saddled with a portion of the aggregate fault, she has waived any right to now urge a contrary position on this appeal. We have frequently recognized that ordinarily questions not presented to and not passed on by the trial court cannot be raised or reviewed on appeal; the theory under which a case is tried in the trial court should be the theory upon which the appeal is based. *See Kartridg Pak Co. v. Department of Revenue,* 362 N.W.2d 557, 561 (Iowa 1985); *Shill v. Careage Corp.,* 353 N.W.2d 416, 420–21 (Iowa 1984).

■ This rule is not, however, without exceptions. We recognized in *Wolfe v. Graether,* 389 N.W.2d 643, 659 (Iowa 1986), that a reversal of a judgment on the appeal of one claim may require reversal of the judgments entered on other claims even where no independent error has been established on the latter claims. Quoting from 5B C.J.S. *Appeal & Error* § 1919 (1958), we stated that this may occur where "the cause of action is of such a nature that the rights and issues are interdependent and injustice might result from a reversal as to less than all the [claims]." *Id.* at 659. We believe this is a situation where this principle should be applied.

The record reflects that Mary was forced to claim against William as a direct consequence of the decision of the Schwennen defendants to seek contribution from him for their liability to Mary. In the application of section 668.3(2)(b) the presence of a third-party defendant can result in siphoning off a portion of aggregate fault from the defendants against whom the plaintiff is claiming. This can result in a plaintiff who is not personally at fault receiving less than a full recovery.

---

**3.** The current version of Iowa Uniform Jury Instruction 400.4 advises the jury that the court will not reduce one claimant's recovery for the fault of another claimant except where fault is imputed under common-law or statutory rules otherwise applicable. The jury should also be advised in such situations that the fault of another claimant should not be considered in arriving at the 100% aggregate of causal fault.

In order to protect one's self in such situations a plaintiff must, as did Mary, claim directly against the third-party defendant. Mary's application for leave to amend her petition made it clear that this was her reason for claiming against William. Her legally unsustainable claim against William was, in effect, prompted by the Schwennen defendants' legally unsustainable third-party claim against him.

As a result of the litigating position into which Mary was forced, she had no avenue for arguing in the alternative. The claims had to be submitted to the jury under a single theory as to whom the responsible parties were. Because this question has only now been determined, Mary should be granted another opportunity to have her claim submitted in the proper manner.

### III. *Required Disposition.*

Finally, we must consider the disposition which is appropriate as a result of William's fault having been improperly submitted to the jury. Mary argues that the court may correct the verdict by a process of interpolation. She suggests this may be accomplished by disregarding William's fault and assessing twenty-seven thirty-sevenths of the remaining aggregate fault to the Schwennen defendants and ten thirty-sevenths thereof to Floyd County. For reasons which we discuss we find this suggestion to be untenable.

In *Nichols v. Westfield Industries,* 380 N.W.2d 392, 401–02 (Iowa 1985), we considered whether the elimination on appeal of claims against some but not all defendants requires a new trial for purposes of rendering a new apportionment of causal fault among the remaining parties. We suggested that the test for deciding this question is not whether the remaining parties might obtain a different result in a new trial, but, rather, whether any injustice befell those parties at the original trial as a result of submitting improper claims against other parties. *Id.* Judged by this standard, we conclude that the issue of the proper apportionment of aggregate fault between the Schwennen defendants and Floyd County must be retried.

A salient feature of our comparative fault legislation is the provision in section 668.3(5) that the jury must be made aware of the effect of its fault apportionment on the claimant's right of recovery. In *Reese,* 379 N.W.2d at 4, we found it to be reversible error for the court to fail to instruct on this matter or to give misleading instructions with respect thereto. The instructions given the jury in the present case were based on the premise that William could be subjected, as he was, to some allocation of causal fault. When William's fault is disregarded the interpolated verdicts suggested by Mary will have a substantially different effect on the Schwennen defendants and Floyd County than the jury would have perceived them to have under the trial court's instructions. This circumstance, we believe, requires that the apportionment of fault among the remaining parties must be tried anew.

We do not believe, however, that it is necessary to retry the issues concerning the total amount of Mary's damages. The jury was instructed pursuant to section 668.3(2)(a) that this determination was to be made irrespective of the fault of any of the parties. Under the circumstances it will not be assumed that any error committed on the apportionment of fault would corrupt the jury's determination as to the total amount of damages suffered by Mary. *See, e.g., Rinkleff v. Knox,* 375 N.W.2d 262, 269 (Iowa 1985). Upon retrial the total amount of Mary's damages will be deemed to be the amount established by the jury at the initial trial.

Mary's judgment against William is reversed. Her judgment against the Schwennen defendants is reversed and the case is remanded for a retrial of that claim for purposes of establishing the proper apportionment of causal fault between those defendants and Floyd County. Their combined fault should total 100% of the causal fault involved in Mary's claim against the parties to this action. Because Floyd County is no longer a party to the action its fault shall be treated as that of a released

party under section 668.2(3).[4] Costs of this appeal are assessed fifty percent to Mary E. Abell and fifty percent to the Schwennen defendants.

REVERSED AND REMANDED.

All Justices concur except HARRIS, J., and McGIVERIN, C.J., and SNELL, J., who dissent.

HARRIS, Justice (dissenting in part).

A judicial opinion draws its importance, not from what it says, but from what it holds. Although the majority opinion reflects exhaustive research and careful scholarship it nevertheless strikes me as flawed because of its practical effect. I dissent from division II C because I believe the holding is out of plumb with the comparative fault act and with our own holdings.

The facts are important because they are extreme and emphasize the incongruity of the majority position. Mary E. Abell's consortium claim stems from an automobile collision. Mary's husband, William Abell, was driving a car which collided with one driven by Schwennen. Mary's loss of consortium claim was brought against her husband, the other driver and, because of its duty to maintain the intersection where the accident occurred, Floyd County. A jury fixed Mary's damages at $85,000 and assessed fault 63% to William Abell, 27% to the Schwennens, and 10% to Floyd County.

My difference with the majority is on the question of whether Mary's consortium judgment against the other defendants should be reduced by the percentage of fault assigned to her husband. The majority thinks it should not; I think it should.

In *McIntosh v. Barr*, 397 N.W.2d 516, 517 (Iowa 1986), we held that a husband is not liable to his wife for loss of consortium when his injuries result in part from his own negligence. If, as I believe, this is sound law, it makes no practical sense to allow recovery against others for the husband's same fault. Either a husband should be made to pay for consortium loss derived from his own fault, or others should not be made to pay for it. Because I think our holding in *McIntosh* was right I think the majority holding in this case is wrong.

The majority holding in effect allows for joint and several liability in contravention of Iowa Code section 668.4.[1] This is what really happens when other defendants can be made to answer for William Abell's 63% of the fault.

The majority says, because there is no viable claim against William Abell, he should not be considered a party for purposes of allocating fault. This general rule is indeed supported by the authorities cited, but it should not apply here. None of the cited cases involved a loss of consortium claim. *See Peterson v. Pittman*, 391 N.W. 2d 235, 238 (Iowa 1986); *Reese v. Werts Corp.*, 379 N.W.2d 1, 4 (Iowa 1985).

The rule may seem reasonable enough for general application but it becomes patently unreasonable when it is injected into a loss of consortium claim. Consortium claims are unique. They involve close family relationships and compensate for voluntary services which, we have said, cannot be legally exacted. *McIntosh*, 397 N.W.2d at 518.

Although the same legal ratiocinations now employed by the majority would have suggested no liability, we held in *McIntosh* that a wife cannot recover from her husband when his negligence causes her a loss of consortium. *Id.* But what the right hand took away in *McIntosh*, the left hand now restores under the majority holding. Others are made to answer for the husband's fault, even in a consortium claim.

In the end I am unwilling to extend liability for William's fault to other defendants because I am persuaded it would be illogi-

---

**4.** Because this action was filed before July 1, 1984, the fault of Floyd County as a released party may only be considered for purposes of apportioning fault under § 668.4. It cannot be utilized to reduce Mary's claim as otherwise provided in § 668.7.

**1.** Section 668.4 states:
  In actions brought under this chapter [comparative fault], the rule of joint and several liability shall not apply to defendants who are found to bear less than fifty percent of the total fault assigned to all parties.

cal and wrong. Having refused Mary a consortium recovery against her negligent husband I would not transfer his liability to other defendants who were less at fault than he was.

The trial court's entry of judgment in favor of Mary and against William must, I agree, be reversed. But consortium awards against those whose negligence contributed to an injury should be reduced by the fault assigned to the injured spouse.

McGIVERIN, C.J., and SNELL, J., join this dissent.