# IN THE COURT OF APPEALS OF IOWA

No. 18-2185
Filed November 4, 2020

**BRIAN SIMONSON,**
      Plaintiff-Appellant,

**vs.**

**CUTTY'S DES MOINES CAMPING CLUB, INC.,**
      Defendant-Appellee.
_____

**ANDREW ROBY,**
      Plaintiff-Appellant,

**vs.**

**CUTTY'S DES MOINES CAMPING CLUB, INC.,**
      Defendant-Appellee.
_____

      Appeal from the Iowa District Court for Polk County, Samantha Gronewald, Judge.

      Plaintiffs appeal from the judgment entered upon a jury verdict awarding them damages on their negligence action against the defendant. **REVERSED AND REMANDED.**

      Bruce H. Stoltze of Stoltze & Stoltze, PLC, Des Moines, and Billy J. Mallory, West Des Moines, for appellants.

      Christopher Scott Wormsley of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellee.

      Heard by Vaitheswaran, P.J., and Tabor and Schumacher, JJ.

**VAITHESWARAN, Presiding Judge.**

Brian Simonson and Andrew Roby were staying at Cutty's Des Moines Camping Club, Inc. (Cutty's) when they got into a fight with another patron, Justin Jones. Jones stabbed Simonson and Roby. He entered an *Alford* plea to willful injury.[1]

Simonson and Roby (plaintiffs) sued Cutty's and Jones for damages. They eventually moved to dismiss Jones without prejudice, a motion the district court granted.

The plaintiffs raised several claims against Cutty's, two of which they voluntarily dismissed. They proceeded to trial on their allegations that Cutty's (1) breached a special duty to them "as innkeeper or possessor of land"; (2) was negligent in several respects; (3) failed to warn them of similar crimes in the past and the absence of "adequate security measures and security personnel to protect guests"; and (4) owed them punitive damages. Cutty's raised the affirmative defense of comparative fault and filed a cross-claim against Jones for contribution and indemnity.

At the close of the plaintiffs' case, the district court granted a motion for directed verdict in favor of Cutty's on the special-duty, failure-to-warn, and punitive-damages claims, leaving only the general negligence claim for the jury. The district court submitted the affirmative defense of comparative fault and the claims from Cutty's for contribution and indemnity to the jury. The jury returned a verdict in favor

---

[1] An *Alford* plea is a variation of a guilty plea in which the defendant does not admit to participation in the acts constituting the crime but consents to the imposition of a sentence. *North Carolina v. Alford*, 400 U.S. 25, 37 (1970).

of the plaintiffs but assigned Cutty's only twelve percent of the fault and Jones fifty percent with respect to Simonson and sixty-nine percent with respect to Roby. The plaintiffs moved for a new trial. The district court denied the motion following a hearing.

On appeal, the plaintiffs contend the district court erred or abused its discretion in (1) granting the motion for directed verdict in favor of Cutty's on their special-duty claims; (2) "failing to instruct the jury on duty, and/or grant a new trial, as to the cause of action for negligence"; (3) including an allocation of fault for Jones in the jury instructions and verdict form and allowing Jones' fault to be compared to their fault; (4) granting the motion for directed verdict in favor of Cutty's on their punitive-damages claim; and (5) failing to find the damage award "inadequate," lacking in "substantial justice," and "inconsistent with the verdict and evidence." We find the third issue dispositive.

The issue arose as follows. The district court's proposed instructions required the jury to determine whether Jones was at fault and to allocate a percentage of fault to him. At the instruction conference, the plaintiffs argued that allowing Jones "to be compared to" them was "error." They noted that Jones was "not a defendant as to the[ir] allegations . . . , having been . . . taken out," and Cutty's had limited its claim against Jones to one "for contribution and indemnity." They contended there was "no way a contribution claim c[ould] exist at this point in time because Cutty's ha[d] [not] paid it." They also asserted inclusion of Jones would "confuse[ ]" the jury because it would "wrongly appear[ ] to the jury that somehow they" were claiming he was at fault. In their view, "a plaintiff's conduct is not to be compared to an intentional tort of a defendant." The plaintiffs also objected to the

verdict forms on the same grounds. The district court declined to amend the proposed instructions.

The jury was instructed that, according to Cutty's, "Jones was at fault because of his negligence" and Cutty's would have to prove the elements of negligence. The jury also was asked to answer the following questions about Jones: (1) "Was Justin D. Jones at fault?" and (2) "Was the fault of Justin D. Jones a proximate cause of any item of damage to Plaintiff[s]?" The jury answered "Yes" to both questions. As noted, the jury questions on calculation of the percentage of fault included Jones' fault. The jury answered the questions as follows:

> Using 100%, what percentage of fault would you assess to Defendant, Cutty's Des Moines Camping Club, Inc., Justin D. Jones and Brian Simonson?
>
> | | |
> |---|---|
> | Cutty's Des Moines Camping Club, Inc. | 12 % |
> | Justin D. Jones | 50 % |
> | Brian Simonson | 38 % |
> | TOTAL: | 100 % |
>
> Using 100%, what percentage of fault would you assess to Defendant, Cutty's Des Moines Camping Club, Inc., Justin D. Jones and Andrew Roby?
>
> | | |
> |---|---|
> | Cutty's Des Moines Camping Club, Inc. | 12 % |
> | Justin D. Jones | 69 % |
> | Andrew Roby | 19 % |
> | TOTAL: | 100 % |

In rejecting the plaintiffs' post-trial challenge to the instructions and verdict forms, the district court relied on language in Iowa Code section 668.3 (2016), part of our comparative fault statute.

Iowa Code section 668.3(2) states:

> 2. In the trial of a claim involving the fault of more than one party to the claim, including third-party defendants and persons who have been released pursuant to section 668.7, the court, unless otherwise agreed by all parties, shall instruct the jury to answer special

interrogatories or, if there is no jury, shall make findings, indicating all of the following:

    a. The amount of damages each claimant will be entitled to recover if contributory fault is disregarded.

    b. The percentage of the total fault allocated to each claimant, defendant, third-party defendant, person who has been released from liability under section 668.7, and injured or deceased person whose injury or death provides a basis for a claim to recover damages for loss of consortium, services, companionship, or society. For this purpose the court may determine that two or more persons are to be treated as a single party.

The plaintiffs contend the provision "does not require the same interrogatory to be submitted for the determination of fault." Because the "[o]nly claim" Cutty's made against Jones was "for contribution and indemnity," they assert

the appropriate procedure is to allow for the fault of the plaintiffs to be compared to Cutty's, with Cutty's being held responsible for the fault of the attacking person. Then, as part of the indemnity or contribution claim, Cutty's would be allowed to attempt to obtain a verdict against Jones from any liability established against Cutty's.

Cutty's responds that "[i]nclusion of defendant Jones in the allocation of fault [was] required under Iowa Code section 668.[3](2)." We believe other provisions of the comparative fault statute bear on the analysis.

Section 668.3(5) states: "If the claim is tried to a jury, the court shall give instructions and permit evidence and argument with respect to the effects of the answers to be returned to the interrogatories submitted under this section." Iowa Code § 668.3(5). Section 668.4 states "the rule of joint and several liability shall not apply to defendants who are found to bear less than fifty percent of the total fault assigned to all parties." *Id.* § 668.4.

The supreme court considered these provisions in *Reese v. Werts Corp.*, 379 N.W.2d 1, 2–6 (Iowa 1985). There, a defendant filed a cross-claim against certain defendants "seeking contribution and indemnity on various theories."

*Reese*, 379 N.W.2d at 2. A jury "was asked to decide whether and to what extent each party was causally negligent." *Id.* The jury found the cross-claim defendants sixty percent at fault and the primary defendant fifteen percent at fault. *Id.* The plaintiff argued the court "misled the jury in its instructions on the effect on the special verdicts." *Id.* at 3. The supreme court agreed, finding the trial court's actual advice "misleading" because the instructions did "not take into account the effect of section 668.4." *Id.* at 3–4. The court stated section 668.3(5) required "the court to instruct the jury not only on the effect of the claimant's contributory fault but also on the effect of the fault of other parties" including the effect that "a defendant who bears less than fifty percent of the total fault is not jointly and severally liable." *Id.* In short, the district court "was required to instruct the jury of the effect of the answers to the special verdicts on plaintiff's recovery." *Id.* at 3. Because "the trial court erred . . . in failing to instruct the jury fully on the effect of its answers to the special verdict," the court reversed and remanded for a new trial. *Id.* at 4.

Here, the jury was instructed on the consequences of finding the plaintiffs at fault but not the consequences of finding Jones at fault and, specifically, the limitation on joint and several liability set forth in section 668.4.[2] The jury also

---

[2] The jury received the following instruction relative to the plaintiffs' fault:

> After you have compared the conduct of all parties, if you find the Plaintiff Brian Simonson was at fault and that his fault was more than 50% of the total fault, the Plaintiff Brian Simonson cannot recover damages.
>
> However, if you find Mr. Simonson's fault was 50% or less of the total fault, then I will reduce the total damages by the percentage of Mr. Simonson's fault.
>
> After you have compared the conduct of all parties, if you find the Plaintiff Andrew Roby was at fault and that his fault was more than 50% of the total fault, the Plaintiff Andrew Roby cannot recover damages.

received an instruction on determining Jones' fault but no explanation that his fault was limited to a determination of contribution and indemnity and no explanation on the effect of a fault finding on the Plaintiff's recovery.[3] We conclude the absence of these explanatory instructions amounted to legal error. *See Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707 (Iowa 2016) (reviewing the district court's refusal "to give a requested jury instruction for correction of errors at law").

Our finding of error is premised on the section 668.3(5) obligation of the court to inform the jury of the effect of its answers on the verdict, including the effect of section 668.3(4). Nonetheless, we feel compelled to address the separate but related assertions of Cutty's that we should affirm the district court because (1) its

---

However, if you find Mr. Roby's fault was 50% or less of the total fault, then I will reduce the total damages by the percentage of Mr. Roby's fault.

[3] The jury received the following instruction relative to Jones:

Cutty's claims Third-Party Defendant Justin D. Jones was at fault because of his negligence.

Cutty's must prove the following propositions.

1. That on or about July 18–19, 2015, Justin D. Jones was negligent in any one of the following ways:

    a. By physically assaulting Plaintiffs Brian Simonson and Andrew Roby; or

    b. By not acting as a reasonably person under the circumstances; or

    c. Not taking reasonable steps to avoid a foreseeable physical altercation; or

    d. By unreasonably escalating the physical altercation to include the use of lethal force; or

    e. Instigating a confrontation that would reasonably lead to the foreseeable consequences of a physical altercation.

2. That Justin D. Jones' negligence was a proximate cause of Plaintiffs' damages.

If Cutty's has failed to prove both of these propositions, then Third-Party Defendant Justin D. Jones was not negligent.

contribution and indemnity claim against Jones "put [Jones'] fault towards Simonson and Roby at issue" and (2) "[Jones'] inability to plead comparative fault himself does not serve as a bar to Simonson and Roby's right to pursue a negligence claim against him and should not remove Jones from the comparative fault calculus."

Iowa Code section 668.2 includes "[a] third-party defendant" within the definition of "party." *See I*owa Code § 668.2(3). And section 668.3(2) refers to "third-party defendants" in requiring special interrogatories on fault. Cutty's hangs its hat on these provisions in arguing that the instructions were not erroneous. A series of supreme court opinions addresses these provisions in the contribution/indemnity context.

In *Reese*, the court stated:

When a right to indemnity arises, it does not affect the division of causal fault among those responsible for injuring the claimant. Thus when section 668.2 defines "party" to include third-party defendant, it means a third-party defendant whose fault toward the claimant is an issue either in the original action or the third-party action. When the third-party defendant is in the case only on an indemnity claim not involving comparative fault, the third-party's fault toward the plaintiff is not an issue.

379 N.W.2d at 6.

The supreme court reaffirmed that point in *Schwennen v. Abell*, 430 N.W.2d 98, 102 (Iowa 1988). There, the court addressed "the apportionment of fault among parties and released parties pursuant to section 668.3(2)(b)." *Schwennen*, 430 N.W.2d at 102. Quoting *Reese*, the court stated, "only parties 'whose fault toward the claimant is an issue' should be included in the total aggregate of causal fault." *Id.* (quoting *Reese*, 379 N.W.2d at 6). The court also stated the converse

proposition: "The fault of parties toward the claimant which has not been placed in issue cannot be considered." *Id.* And, the court stated, "fault of parties placed in issue in the pleadings which is ultimately determined to be legally insufficient to support the claim may not be considered in the aggregate fault apportionment." *Id.* The court elaborated, "With respect to a third-party defendant, [legal sufficiency] occurs when a defendant bases the third-party claim in whole or in part on some fault of the third-party defendant toward the claimant which would be legally sufficient to render that party liable upon the same indivisible claim for the same injury." *Id.* at 103. The court found a claim for contribution against a third-party defendant "lacking in legal efficacy." *Id.* The court concluded, "Because no legally sustainable theory of recovery [could] be predicated on [that defendant's] fault toward [the plaintiff], his fault should not have played a role in the apportionment of aggregate fault under section 668.3(2)(b)." *Id.* In the court's words, the consequence of including a defendant whose fault was not at issue in the total allocation of causal fact was "that the percentage of fault apportioned to [that defendant] . . . distorted the percentage of fault properly . . . ascribed to the [other] defendants." *Id.*

The court underscored that distortion effect in *Pepper v. Star Equipment, Ltd.*, 484 N.W.2d 156, 157–58 (Iowa 1992). Considering the inclusion of a defendant who was in bankruptcy, the court stated: "[T]he presence of a third-party defendant in an action may siphon off a portion of aggregate fault from the defendant against whom the plaintiff is claiming. This can result in the plaintiff receiving a lesser recovery than if the third-party defendant were not in the case." *Pepper*, 484 N.W.2d at 158. The court continued,

> A plaintiff's only real protection against this type of recovery diminution is to claim directly against the third-party defendant on the same cause of action alleged against the primary defendant. . . . If, however, as in the present case, the plaintiff has no possibility of obtaining an enforceable judgment against the third-party defendant, plaintiff has no protection against fault siphoning. In addition, this situation is aggravated by the fact that the defendant against whom plaintiff has claimed will normally attempt to shift blame for the occurrence to the bankrupt third-party defendant who has no interest in the result of the litigation and thus no motive to defend against the claims.

*Id.*

Two years later, the court again broached the subject in *Spaur v. Owens-Corning Fiberglas Corp.*, 510 N.W.2d 854, 862–63 (Iowa 1994). The court acknowledged a third-party defendant against whom contribution was claimed fell within the statutory "definition of a 'party' for purposes of comparative fault calculation" but noted bankruptcy litigation precluded litigation against the third-party defendant. *Spaur*, 510 N.W.2d at 863. Citing *Pepper*, the court stated, "Because the presence of a third-party defendant who has a special defense to plaintiff's claim may 'siphon off' a portion of the aggregate fault, the plaintiff will recover less than if the third-party defendant is not in the case." *Id.* The court affirmed the exclusion of the third-party defendant from the verdict form. *Id.*; *see also Baker v. City of Ottumwa*, 560 N.W.2d 578, 584 (Iowa 1997) ("[W]here special defenses shield a codefendant from judgment, the fault at issue should be borne—not by the plaintiff—but by the defendant against whom plaintiff has a viable claim."); *Lee v. Small*, 829 F. Supp. 2d 728, 753 (N.D. Iowa 2011) ("[I]t is not enough simply to bring a person or entity into the litigation as a 'third-party defendant' to attribute fault to that party or entity on the original claimant's claim; rather, the fault of that person or entity 'toward the claimant' must be put at issue.

Moreover, even where the pleader attempts to put the fault of the third party at issue, by claiming that the third party is at fault toward the original claimant, the claim against the third party must have 'legal efficacy.'" (citations omitted)); *cf. Kragel v. Wal-Mart Stores, Inc.*, 537 N.W.2d 699, 706–07 (Iowa 1995) (concluding a defendant's contribution claims against third parties "put in issue their fault towards the [plaintiffs]" and their fault "should have been included in the total aggregate of causal fault toward the [plaintiffs]" but not faced with the question of a third-party's defense to the action).

Cutty's acknowledges Jones' "inability to plead comparative fault." This concession from Cutty's is required by precedent. *See Tratchel v. Essex Grp., Inc.*, 452 N.W.2d 171, 180–81 (Iowa 1990) (stating the common law rule that "negligence is not a defense to fraud or to an intentional tort" was applicable after the enactment of chapter 668), *abrogated on other grounds by Comes v. Microsoft Corp.*, 775 N.W.2d 302 (Iowa 2009); *see also* Iowa Code § 668.1(1) (defining "fault" as "one or more acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability," including "breach of warranty, unreasonable assumption of risk not constituting an enforceable express consent, misuse of a product for which the defendant otherwise would be liable, and unreasonable failure to avoid an injury or to mitigate damages"); *cf. Mulhern v. Catholic Health Initiatives*, 799 N.W.2d 104, 114 (Iowa 2011) (holding a plaintiff's suicide could be found "negligent" within the meaning of section 668.1(1)); *but see Marchionda v. Embassy Suites Franchise, LLC*, No. 4:15-CV-00479-JEG, 2017 WL 11179923, at *7–8 (S.D. Iowa Aug. 23, 2017) (stating "*Mulhern* did not disturb the rule that intentional conduct generally

does not constitute 'fault,'" and concluding defendants who filed a third-party complaint seeking contribution against a tortfeasor who pled guilty to crimes against the plaintiff did not offer "an explanation as to how, given the content of the remainder of the pleadings, [the torfeasor's] conduct could ever ultimately be determined to be anything other than intentional (and thus not subject to contribution")).[4]

---

[4] The court in *Marchionda* observed:

> The Restatement (Third) of Torts acknowledges that the majority rule appears to be to refuse to allow a negligent tortfeasor to seek contribution from an intentional tortfeasor in this scenario. Restatement (Third) of Torts: Apportionment of Liability § 14 cmt. b (Am. Law Inst. 2000); accord *Kan. State Bank & Tr. Co. v. Specialized Transp. Servs. Inc.*, 819 P.2d 587, 606 (Kan. 1991) ("Negligent tortfeasors should not be allowed to reduce their fault by the intentional fault of another that they had a duty to prevent."); *Veazey v. Elmwood Plantation Assocs., Ltd.*, 650 So. 2d 712, 719 (La. 1994) (holding that under Louisiana's comparative fault statute, intentional torts may be compared against negligent torts in general, but "that negligent tortfeasors should not be allowed to reduce their fault by the intentional fault of another that they had a duty to prevent"); *Brandon ex rel. Estate of Brandon v. Cty. of Richardson*, 624 N.W.2d 604, 620 (Neb. 2001) ("[I]t would be irrational to allow a party who negligently fails to discharge a duty to protect to reduce its liability because there is an intervening intentional tort when the intervening intentional tort is exactly what the negligent party had a duty to protect against."); *Turner v. Jordan*, 957 S.W.2d 815, 823 (Tenn. 1997) ("[T]he conduct of a negligent defendant should not be compared with the intentional conduct of another in determining comparative fault where the intentional conduct is the foreseeable risk created by the negligent tortfeasor."). The rationale for this rule is that several liability between the negligent and intentional tortfeasor would often result in a high share of liability assigned to the intentional tortfeasor, who is often insolvent, even though the negligent tortfeasor by definition should have prevented the intentional tortfeasor from causing injury. Dan P. Dobbs, Paul T. Hayden & Ellen M. Bublick, The Law of Torts § 498 (2d ed. 2011). This results in under-compensation for the injured plaintiff and under-deterrence for negligent parties who unreasonably fail to protect innocent parties. *Id.* The Restatement (Third) advocates joint and several liability for the negligent tortfeasor rather

As noted, Jones entered an *Alford* plea to willful injury, a crime that he agreed criminalized "an act which is not justified and which is intended to cause serious injury to another." Because he was named solely as a contribution/indemnity defendant and he lacked a viable defense under the comparative fault statute, his causal fault was not "an issue" under *Reese*, *Schwennen*, *Pepper*, *and Spaur*. But, to reiterate, we need not rest our decision on this point because, as discussed, Jones could not be included in the instructions without explanatory instructions on the reason for his inclusion and the effect of his fault allocation on the plaintiff's recovery. As the plaintiff's urge, those explanatory instructions could come in the form of a separate verdict form for purposes of contribution. *See Schwennen*, 430 N.W.2d at 103 ("If, in actions involving multiple claimants, the fault of one claimant is not a legally viable issue in determining the rights of another claimant, separate verdict forms must be utilized to obtain a proper apportionment of causal fault as to each claimant."); *Nationwide Agribusiness Ins. Co. v. PGI Int'l*, No. 18-1315, 2019 WL 6894253, at *7 (Iowa Ct. App. Dec. 18, 2019) (concluding section 668.5 authorized the inclusion of "other alleged tortfeasors" for contribution purposes). We are left with the argument from Cutty's that the instructional/verdict form errors were not prejudicial. Cutty's asserts, "Even if Jones were removed from the verdict form, this does not alter the jury's determination of relative fault between [the plaintiffs] and Cutty's," because "the jury verdict without Jones, if considered on a 100% fault basis, would place more than 50% fault on

---

than no contribution at all. Restatement (Third) of Torts: Apportionment of Liability § 14.
2017 WL 11179923, at *6 n.9.

[each plaintiff]," "preclud[ing the plaintiffs] from recovery based on Iowa Code section 668.3(1)(a)."

"Instructional errors do not merit reversal unless prejudice results." *See Rivera v. Woodward Res. Ctr.*, 865 N.W.2d 887, 892, 902 (Iowa 2015). "Prejudice occurs and reversal is required if jury instructions have misled the jury, or if the district court materially misstates the law." *Id*. "When jury instructions contain a material misstatement of the law, the trial court has no discretion to deny a motion for a new trial." *Id*. (quoting *Benn v. Thomas*, 512 N.W.2d 537, 539 (Iowa 1994)).

Because the instructions and verdict forms failed to explain the import of Jones' inclusion, we conclude they were misleading and the plaintiffs were prejudiced. We reverse and remand for new trial. *See Reilly v. Anderson*, 727 N.W.2d 102, 114 (Iowa 2006) (concluding a defendant was prejudiced by the application of the joint- and several-liability rule, requiring retrial); *Schwennen*, 430 N.W.2d at 104 (reversing and remanding for new trial); *Reese*, 379 N.W.2d at 4 (same); *cf. Mulhern*, 799 N.W.2d at 119 (not requiring a new trial where the plaintiff intentionally inflicted harm upon herself).

In light of our reversal and remand for retrial on the allocation-of-fault question, we find it unnecessary to address the remaining issues.

**REVERSED AND REMANDED.**