Elizabeth M. SCHWENNEN, Executor of the Estate of John G. Schwennen, Jr., Deceased, Plaintiff,

v.

William T. ABELL and Floyd County, Iowa, Defendants.

William T. ABELL, Cross–Petitioner,

v.

John Karl SCHWENNEN, Defendant to Cross–Petition.

Mary E. ABELL, Appellee,

v.

Elizabeth M. SCHWENNEN, Executor of the Estate of John G. Schwennen, Jr., Deceased, John Karl Schwennen and Floyd County, Iowa, Appellants.

No. 90–285.

Supreme Court of Iowa.

June 19, 1991.

Donald H. Gloe and Linny C. Emrich of Miller, Pearson, Gloe, Burns, Beatty & Cowie, P.C., Decorah, for appellant.

Judith O'Donohoe of Eggert, Erb, Ott, O'Donohoe & Frye, Charles City, for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and SNELL, JJ.

LAVORATO, Justice.

In this comparative fault case we must decide whether the defendants are entitled to a credit for an excess payment they voluntarily made on a judgment that was subsequently reversed. The district court refused to give the defendants such a credit. We hold that the defendants were entitled to the credit. We reverse and remand with directions on this issue and on several other related issues raised by the defendants in their appeal.

In her cross-appeal the plaintiff contends she is entitled to a new trial because the district court erred in certain evidentiary rulings. In addition, she contends there was jury misconduct and that the evidence was not sufficient to support the jury's allocation of fault. We affirm on the cross-appeal.

I. *Background Facts and Proceedings.*

The facts giving rise to this litigation stem from an automobile collision that happened on August 9, 1982. William T. Abell was the driver of one automobile; John Karl Schwennen was the driver of the other. William and John Karl were injured. John G. Schwennen, Jr.—John Karl's father—was a passenger in the Schwennen automobile and was its owner. John G. was killed in the collision.

John G.'s estate sued William T. Abell. William counterclaimed, seeking damages for his injuries. Later, William's wife, Mary, sued separately for loss of spousal consortium because of William's injuries. She named the Schwennen estate, John Karl, and Floyd County as defendants. Later, the two lawsuits were consolidated. Shortly before trial Mary amended her petition to include William as a defendant.

On Mary's loss of consortium claim, the jury found that she had been damaged in the amount of $85,000. The jury apportioned 63% of the fault to William, 27% to the Schwennen defendants, and 10% to Floyd County. The district court treated the Schwennen estate and John Karl as a single party because the estate's liability was vicarious. *See* Iowa Code §§ 321.493 (1981) (owner's liability), 668.3(2)(b) (1985) (court may treat two or more persons as a single party for purpose of allocation of fault).

William appealed. Mary cross-appealed.

While the case was pending on appeal, the Schwennens tendered into the district court a partial satisfaction of the judgment against them. This was done on June 30, 1987, to stop interest from accruing while the case was on appeal. In their tender the Schwennens expressly reserved their right to appeal, thereby preserving that right.

*See Starke v. Horak*, 260 N.W.2d 406, 407–08 (Iowa 1977). One month later the Abells received these funds by oral order of the district court.

We reversed and remanded on Mary's consortium claim for a limited retrial for apportionment of fault between the Schwennens and Floyd County. We determined William's fault should not be included. *See Schwennen v. Abell*, 430 N.W.2d 98, 104 (Iowa 1988). We let stand the jury's finding that Mary had suffered damages in the amount of $85,000. *See id.*

On the retrial, the jury apportioned fault as follows: 85% to Floyd County and 15% to the Schwennens. On July 21, 1989, the district court entered judgment in favor of Mary and against the Schwennens for $12,750 ($85,000 × 15%). It also allowed interest on the judgment at ten percent per year from March 30, 1983. The principal and interest totaled $18,167.88. Before the retrial Mary settled with Floyd County, so no judgment was entered against it.

In its tender the Schwennens had paid Mary $19,214.92 in principal and $8,165.02 in interest for a total of $27,379.94. So the Schwennens had paid Mary $9,212.06 ($27,379.94 − $18,167.88) more than they owed her. In a postjudgment motion the Schwennens asked the district court to enter judgment against Mary in their favor for this excess together with interest. The Schwennens also asked for a satisfaction in full of Mary's judgment against them.

The district court denied this postjudgment motion and Mary's motion for new trial.

The Schwennens appealed; Mary crossappealed.

## II. *Issues on Appeal.*

The Schwennens contend the district court erred when it refused to give them the relief they had asked for in their postjudgment motion. Mary had resisted the motion. She argued the district court had no authority to give the Schwennens a judgment against her because they had not sued separately for it.

In oral argument Mary's attorney conceded several things. First, she conceded Mary had been overpaid $9,212.06. Second, she conceded the district court had authority to enter judgment against Mary in favor of the Schwennens for the excess and for interest. Last, she conceded that the Schwennens were entitled to a satisfaction in full of Mary's judgment against them.

A. *Judgment for excess.* In support of their contention that they are entitled to a judgment for the excess, the Schwennens rely on Iowa Code section 686.15 (1989). They also rely on the inherent power of the court to grant such relief. Section 686.15 provides:

> If, by the decision of an appellate court, the appellant becomes entitled to a restoration of any part of the money or property that was *taken* from the appellant by means of a judgment or order, either the appellate court or the court below may direct execution or writ of restitution to issue for the purpose of restoring to the appellant such property or its value.

(Emphasis added.) The problem with applying this statute is that the Schwennens made a voluntary payment. The word "taken" in the statute implies an involuntary payment resulting, for example, from a writ of execution. Simply put, section 686.15 does not apply.

However, we think the Restatement of Restitution covers a voluntary payment. Section 74 of the Restatement provides:

> *A person who has conferred a benefit upon another in compliance with a judgment,* or whose property has been taken thereunder, *is entitled to restitution if the judgment is reversed or set aside,* unless restitution would be inequitable or the parties contract that payment is to be final; if the judgment is modified, there is a right to restitution of the excess.

(Emphasis added.) Restatement of Restitution § 74, at 302–03 (1937).

Comments a and b to section 74 more fully explain the rule:

*a. Procedure.* The rule stated in this section is applicable to cases where a judgment has been entered upon which money has been paid by the defeated party ..., and where subsequently such judgment is reversed ... because of errors of law.... In such cases there are various methods which can be used for securing restitution. The reversing tribunal can itself direct restitution either with or without conditions, or *the tribunal which is reversed can on motion or upon its own initiative direct that restitution be made....*

*b. Conditions of restitution.* The rule is applicable whether the judgment subsequently reversed was originally valid or was void....

In the absence of an agreement that payment of a judgment is to be final, *upon a reversal of the judgment anything paid by way of settlement can be recovered from any person not a bona fide purchaser, although the payment was made without duress, although no execution was issued, and although the payor could have obtained a supersedeas or stay of execution. In such a case, there is coercion only in the sense that the payment is the performance of a legal duty existing at the time.*

(Emphasis added.)

We adopt the Restatement rule for voluntary payment cases involving reversed judgments. We think the inherent power of the court is the basis for this rule. Inherent powers are those within the scope of a court's jurisdiction that a court possesses irrespective of statutory or constitutional grant. 20 Am.Jur.2d *Courts* § 78, at 440 (1965). Inherent powers are limited to those necessary to the existence of the court and the orderly and efficient exercise of its jurisdiction. *Id.* The key words here are "the orderly and efficient exercise" of the court's jurisdiction. When the district court has jurisdiction of the parties and the amount of overpayment is readily determinable or conceded, we see no reason why the court should not enter judgment.

Here the district court had the parties before it. The Schwennens asked for judgment for the excess they had paid. Mary conceded the amount of overpayment. She offered no reason why judgment should not have been entered other than that the Schwennens had not filed a separate suit. Requiring such a suit would be a waste of judicial resources and contrary to the meaning and spirit of the Restatement rule. Mary's counsel apparently now concedes this. The district court erred when it refused to enter the judgment.

**B.** *Interest on the excess paid.* The Schwennens also contend the district court erred when it did not give them interest on the excess they paid Mary. As we said, the excess amounted to $9,212.06. The Schwennens think they are entitled to five percent interest on this amount from June 30, 1987, the date of their tender, until July 25, 1989, the date they filed their postjudgment motion. They think they are also entitled to ten percent from July 25, 1989.

Mary concedes the Schwennens are entitled to interest. But she thinks they are entitled to only five percent interest from July 25, 1989.

Comment d of section 74 of the Restatement of Restitution simply says this:

If payment has been made to the judgment creditor or to his agent, or to an officer who has paid the judgment creditor, upon reversal of the judgment the payor is entitled to receive from the creditor the amount thus paid *with interest.*

(Emphasis added.) By its terms section 74 covers both voluntary and involuntary payments. Although the Restatement provides for interest in both instances, it says nothing about what rate of interest should be paid and from what date.

Generally, when money is voluntarily paid under a mistake of fact or law, interest is allowed when demand for repayment is made and not from the date the money is received. *See* 45 Am.Jur.2d *Interest and Usury* § 90, at 81 (1969); *see also State v. Standard Oil Co.,* 222 Iowa 1209, 1222, 271 N.W. 185, 191–92 (1937). As it turns out, the Schwennens mistakenly overpaid Mary. But they made no demand for the overpayment until they filed their postjudgment motion on July 25, 1989. So

they are not entitled to any interest before that date.

The Schwennens mistakenly rely on Iowa Code section 535.2(1)(b) which allows interest at five percent on money after it becomes due. This is not a case of a failure to pay an obligation after it becomes due. When the Schwennens made their tender, Mary was entitled to what was paid. There was a valid judgment. The judgment was paid when due. At that point Mary was not a defaulting debtor. *See State v. Standard Oil*, 222 Iowa at 1208–09, 271 N.W. at 191–92.

Once the first judgment was reversed and the second and smaller judgment was entered in Mary's favor, money was due the Schwennens. *See id.* But the Schwennens made no demand for the overpayment until their postjudgment motion. Interest began to accrue at that time. That leads us to the question of what rate of interest applies.

Iowa Code section 535.3 allows interest at ten percent per year on all judgments, and such interest accrues from the "date of the commencement of the action." Iowa Code § 535.3. We view the postjudgment motion as the commencement of an action for purposes of section 535.3. We hold that the Schwennens are entitled to a judgment restoring to them the $9,212.06 with interest at ten percent from July 25, 1989.

■ C. *Satisfaction of Mary's judgment against the Schwennens.* Last, the Schwennens contend the district court erred when it did not rule that Mary's judgment against them should be satisfied in full. As we said, Mary's counsel now concedes this. We agree.

Iowa Code section 624.37 provides:

When the amount due upon judgment is paid off, or satisfied in full, the party entitled to the proceeds thereof, or those acting for that party, must acknowledge satisfaction thereof upon the record of such judgment, or by the execution of an instrument referring to it, duly acknowledged and filed in the office of the clerk in every county wherein the judgment is a lien.

Here the Schwennens paid Mary more than the amount of the final judgment. Clearly under section 624.37 they were entitled to a satisfaction of the judgment in full.

III. *Issues on the Cross–Appeal.*

In her cross-appeal Mary contends she is entitled to a new trial because (1) the district court erred in allowing the jury to know about the amount of her consortium damages and about Floyd County's release; (2) the jury committed misconduct by ignoring the court's instructions on allocation of fault; and (3) the verdict was not supported by sufficient evidence.

A. *Jury's knowledge of the amount of consortium damages and of Floyd County's release.* Before closing arguments to the jury, the district court heard Mary's written motion in limine. The motion sought a ruling that no mention be made of the amount of damages the first jury awarded Mary or about Floyd County's release. The district court denied the motion. In an instruction the court told the jury the amount of Mary's damages and about Mary's settlement with Floyd County. In her motion for new trial, Mary claimed this ruling was error which entitled her to a new trial. Mary again urges this ruling as error.

Mary contends the ruling was in error because she thinks chapter 668 does not permit a disclosure of either item of information. For reasons that follow, we disagree.

■ Generally, when special verdicts are used the jury is not told of the impact of its findings. *See Poyzer v. McGraw*, 360 N.W.2d 748, 753 (Iowa 1985). However, when general verdicts are used, the district court instructs the jury that its verdict determines the plaintiff's right to recover. *Reese v. Werts Corp.*, 379 N.W.2d 1, 3 (Iowa 1985).

It is true, as Mary points out, that her case antedates our comparative fault law in Iowa Code chapter 668. Nevertheless, we held in the first appeal that, for various reasons, several comparative fault provisions still applied. *See Schwennen*, 430 N.W.2d at 102. One of those provisions,

we said, included Iowa Code section 668.3. *Id.* at 102–03.

Iowa Code chapter 668 requires the district court to use special verdict forms like the one used here. *See* Iowa Code § 668.3(2). In those forms the jury is asked to make findings on the claimant's damages without regard to contributory fault. *Id.* § 668.3(2)(a). The jury is also asked to allocate "[t]he percentage of the total fault allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under section 668.7." *Id.* § 668.3(2)(b). Iowa Code section 668.3(5) then provides:

> If the claim is tried to a jury, the court shall give instructions and permit evidence and argument with respect to the effects of the answers to be returned to the interrogatories submitted under this section.

In *Schwennen* we were very specific about what should be done on remand:

> [Mary's] judgment against the Schwennen defendants is reversed and the case is remanded for a retrial of that claim for purposes of establishing the proper apportionment of causal fault between those defendants and Floyd County. Their combined fault should total 100% of the causal fault involved in Mary's claim against the parties to this action. Because Floyd County is no longer a party to the action its fault shall be treated as that of a released party under section 668.2(3).

*Schwennen*, 430 N.W.2d at 104–05.

In the remand trial the district court gave several instructions designed to focus the jury's attention on its sole function: to establish the proper apportionment of fault between the Schwennen defendants and Floyd County.

In its first instruction the district court gave a history of the proceedings in this case.

In another instruction the court told the jury that several things had been established in the first trial. First, John Karl Schwennen and Floyd County were negligent and this negligence was the proximate cause of the collision and Mary's damages. Specifications of negligence applicable to each defendant were mentioned and these specifications were later defined in other instructions. Second, Mary's damages had been determined to be $85,000. In this same instruction, the jury was given the following direction:

> Using 100% as the total combined fault of John Karl Schwennen and Floyd County, Iowa, it is now your duty to apportion fault between those parties by allocating a percentage of the total combined fault to each party.

In a different instruction the court told the jury that damages may be the fault of more than one party. It also told the jury that in comparing fault, it should consider

> all of the surrounding circumstances as shown by the evidence, together with the conduct of John Karl Schwennen and Floyd County and the extent of the causal relation between their conduct and the resulting damages to Mary E. Abell. You should then determine what percentage each party's fault contributed to the damages.

The district court mentioned Floyd County's status as a released party in another instruction:

> Since the first trial plaintiff, Mary E. Abell, has resolved her claim with defendant Floyd County, Iowa. Floyd County did not participate at this trial because of its status as a released party. However, its fault is to be apportioned as though it were still a party to this action.

One special verdict form was submitted. Again, the form was tailored to accommodate the jury's sole function in this case. It said:

> We find the following verdict on the question submitted to us:
>
> *Question:* Using 100% as the total combined fault of Floyd County, Iowa, and John Karl Schwennen, what percentage of such combined fault is attributable to Floyd County, Iowa, and what percentage is attributable to John Karl Schwennen?

| Answer: | Floyd County, Iowa | ___% |
| | John Karl Schwennen | ___% |
| | Total | 100% |

Other than one time, the instructions make no reference to the amount of damages. Nor was the jury ever told about the amount of Mary's settlement with Floyd County either by way of evidence or instructions.

■ We think the district court acted well within its discretion when it gave the instructions. Two trials and two different juries were involved. The first jury made determinations about liability and damages that affected what the second jury was supposed to do. In these circumstances the jury was entitled to know the posture of the proceedings so that it could better understand what it was supposed to do.

■ In addition, Floyd County was a released party and presumably not participating at the second trial. Some explanation was in order, not only to explain Floyd County's status as a released party but also its conspicuous absence from trial. Moreover, we fail to see how Mary was prejudiced by this disclosure. We say this because the jury never knew what amount of money Mary had received from Floyd County. And the district court very carefully instructed the jury that fault had to be apportioned as though Floyd County were still a party to the action. Unless the contrary is shown, a jury is presumed to follow the court's instructions. *See Hoekstra v. Farm Bureau Mut. Ins. Co.*, 382 N.W.2d 100, 110 (Iowa 1986).

■ Finally, section 668.3(5) requires the district court to permit evidence and argument with respect to the effects of the answers in the special verdict form. *Reese*, 379 N.W.2d at 3–4. Normally in a comparative fault case a jury, in a special verdict form, allocates fault and then determines damages without regard to fault. *See, e.g.*, Iowa Civil Jury Instructions 300.6 (Jan. 1991). In a multiple defendants' case like this one, section 668.3(5) gives the parties a wide latitude to argue a number of things. For example, the parties could properly argue the amount of damages the plaintiff should receive, what percentage of the total fault should be allocated to the parties including the plaintiff, how the plaintiff's total damages would be affected if a percentage of the total fault were allocated to the plaintiff, and how each defendant's liability for the damages would be affected by the percentage of total fault allocated to each defendant. *Cf. Reese*, 379 N.W.2d at 3–4 (section 668.3(5) requires the district court to instruct on the effect of Iowa Code section 668.4, that is, a defendant who bears less than fifty percent of the total fault is not jointly and severally liable).

Here the jury was not to decide the amount of damages. That decision had already been made in the first case. Without a disclosure of the damage amount, the attorneys would have no way of making any of the arguments in the above examples that would be meaningful.

That leads us to Mary's other related complaint. She thinks the disclosure about Floyd County's release and the amount of damages allowed the Schwennens' attorney to make unfair and prejudicial arguments to the jury. Her argument is this. No fault was to be apportioned to her husband, William T. Abell. Schwennens' attorney, however, could skillfully imply that the jury should take William's fault into account by allocating it to Floyd County. As a released party, Floyd County would not have to pay for any further damages.

■ We reject Mary's argument. She failed to preserve any error on this issue because the closing arguments were not reported. So we have no way of knowing exactly what Schwennens' attorney argued. Although the arguments were not reported, Mary could have properly preserved error by a bill of exceptions as described in Iowa Rule of Civil Procedure 241. The rule pertinently provides:

*a. When necessary.* A bill of exceptions shall be necessary only to effect a showing of material portions of the record of the cause not shown by the ... legally certified shorthand notes of the trial, if any.

. . . .

*c. Certification—judge—bystanders.* The proposed bill of exceptions shall be promptly presented to the trial judge,

who shall sign it if it fairly presents the facts. If he refuses, and counsel so certifies, and at least two bystanders attest in writing that the exceptions are correctly stated, the bill thus certified and attested shall be filed and become part of the record.

This court has held that misconduct of counsel in an unreported argument to the jury must be preserved by a bill of exceptions and certified by the court. *Hornish v. Overton*, 206 Iowa 780, 785, 221 N.W. 483, 485 (1928). That was not done here.

At the hearing on Mary's motion for new trial Schwennens' attorney admitted he argued certain things. He said this:

The substance of the argument I presented was that any fault of William Abell could not be attributed to him and the jury could not assess fault to William Abell.... [B]ecause they couldn't assess fault to William Abell, as between the two parties left it was only Floyd County that could have controlled the actions of the driver William Abell by putting a stop sign or a yield sign on that intersection so that fault should be given to Floyd County because John Schwennen could have no control over there being a stop sign or a yield sign there [the specifications of negligence submitted to the jury] and if the jury felt that was the cause of the accident, then they should have attributed that fault entirely to Floyd County.

We think this argument was within the parameters of section 668.3(5), the court's instructions, and the evidence. Mary's attorney could likewise have argued that John Karl Schwennen's negligence was the cause of the accident and that all of the fault should therefore be allocated to him. The specifications of negligence attributable to John Karl Schwennen included failure to keep a proper lookout, failure to have his car under control, and failure to reduce his speed to a reasonable and proper rate when approaching and crossing the intersection where the accident happened.

■ B. *Jury misconduct.* Under this assignment of error, Mary contends the jury disregarded the court's instruction to apportion fault only between Floyd County and the Schwennens. In support of her contention Mary argues that the jury in fact apportioned fault among three defendants: Floyd County, the Schwennens, and William T. Abell. Mary strenuously asserts this constituted jury misconduct entitling her to a new trial.

Mary relies on several things to support her contention of jury misconduct. Only one merits discussion. Several jurors gave affidavits suggesting that the jury considered William T. Abell's fault and that Floyd County was released and would not be required to pay anything further.

These statements are clearly part of the internal workings of the jury and so inhere in the verdict. Because they inhere in the verdict, the statements may not be relied on to challenge the jury's verdict. *Ryan v. Arneson*, 422 N.W.2d 491, 495 (Iowa 1988) (interpreting Iowa R.Evid. 606(b)); *accord Hobbiebrunken v. G & S Enter., Inc.*, 470 N.W.2d 19, 22 (Iowa 1991).

■ C. *Sufficiency of the evidence.* Finally, Mary contends the evidence was not sufficient to support the jury's allocation of fault: 85% to Floyd County and 15% to John Karl Schwennen.

The first jury found that both defendants were negligent and that their combined negligence proximately caused the collision and Mary's damages. The second jury had only to apportion fault between these defendants. The percentage of fault to be apportioned between the two was a fact question for the jury. On our careful review of the record we cannot say as a matter of law that the evidence failed to support the percentages the jury did find.

IV. *Disposition.* On the appeal, we conclude the district court erred when it did not enter judgment in favor of the Schwennens and against Mary for the excess they paid her. The court also erred when it did not allow interest on this judgment at the rate of ten percent from July 25, 1989. Finally, the district court erred when it did not rule that the Schwennens were entitled to a satisfaction of Mary's judgment against them.

We reverse on the appeal and remand. On remand the district court shall enter judgment against Mary and in favor of the Schwennens for $9,212.06 with interest at ten percent from July 25, 1989. The court shall also order Mary to enter a satisfaction of her judgment against the Schwennens.

On the cross-appeal, we conclude the district court correctly denied Mary's motion for new trial because the court properly denied Mary's motion in limine, there was no jury misconduct, and there was sufficient evidence to support the jury's apportionment of fault.

Accordingly, we affirm on the cross-appeal.

REVERSED AND REMANDED WITH DIRECTIONS ON THE APPEAL; AFFIRMED ON THE CROSS–APPEAL.