Mary D. GLEASON and David Gleason, Plaintiffs–Appellees,

v.

Gary Donald KUEKER, Defendant–Appellant.

No. 00–1043.

Court of Appeals of Iowa.

Aug. 15, 2001.

Henry J. Bevel, III, of Yagla, McCoy & Riley, P.L.C., Waterloo, for appellant.

Craig Ament of Ament Law Firm, Waterloo, for appellee.

Considered by SACKETT C.J., and VOGEL and VAITHESWARAN, JJ.

VAITHESWARAN, J.

A jury awarded Mary Gleason and her husband damages in their personal injury action against Gary Kueker. The damages included an award for future medical expenses. Kueker contends the jury did not reduce this award to present value. We disagree and affirm.

1. The Gleasons introduced standardized mortality tables reflecting a life expectancy for Mary of 30.3 years.

2. The jury specified the following damages:

| Past Medical Expenses | $ 17,607.59 |
| Future Medical Expenses | $126,400.00 |
| Loss of time(earnings) | $ 3,604.25 |

## I. Background Facts and Proceedings

Kueker rear-ended Gleason's car at a stoplight. Gleason sued for injuries sustained in the accident and her husband David sued for loss of consortium.

Dr. Jennifer Rasmussen, a chiropractor who treated Mary Gleason for neck, shoulder, and back pain testified at trial. She opined that the accident resulted in a thirty-two percent whole body impairment rating. She also opined Gleason's condition would worsen and she would eventually need surgery. Dr. Rasmussen stated she released Gleason from her care after fourteen visits because she was unable to do anything for her. Gleason also called Michael Kaus, a physical therapist who treated her. He opined Gleason needed ongoing physical therapy.

The plaintiffs did not call an economic expert to testify about damages. Instead, Gleason herself estimated the damages she believed she had sustained. She testified her post-accident medical expenses totaled $17,607.59. Based on this figure, and a life expectancy of thirty years [1], she approximated her future health costs at $130,000. Gleason stated she arrived at this approximation as follows: "Past health care costs divided by four years times 30 years equals $132,00.57 or last month health costs times 12 times 30 years and that comes to $131,400."

The jury returned a verdict of $299,324.84 for Mary Gleason, $126,400 of which was allocated to future medical expenses.[2] Kueker moved for a new trial

| Loss of future earning capacity | $ 11,713.00 |
| Past loss of full body | $ 10,000.00 |
| Future loss of full body | $100,000.00 |
| Past pain and suffering | $ 5,000.00 |
| Future pain and suffering | $ 25,000.00 |

David Gleason received $1000 for past loss of consortium and $4000 for future loss of consortium.

and remittitur. The district court denied both motions. This appeal followed. On appeal, Kueker challenges only the future medical expenses award.

## II. Scope of Review

Kueker challenges the district court's denial of his motion for new trial as it relates to the jury's award of future medical expenses. Our scope of review on this issue is for abuse of discretion. *See Condon Auto Sales & Service, Inc. v. Crick,* 604 N.W.2d 587, 594 (Iowa 1999).

A denial of remittitur is generally also reviewed for abuse of discretion. *Id.* at 595; *Kuta v. Newberg,* 600 N.W.2d 280, 285 (Iowa 1999). However, where the question is whether the jury followed the law, we believe our review is on error. *See Schnebly v. Baker,* 217 N.W.2d 708, 724 (Iowa 1974) (noting damage award may be set aside if wrong measure is applied); *Schwennen v. Abell,* 471 N.W.2d 880, 887 (Iowa 1991) (jury presumed to follow instructions).

## III. Present Value of Future Medical Expenses

Iowa law requires an award for future damages in a personal injury action to be reduced to present value. *See* Iowa Code § 624.18.[3] The jury received an instruction consistent with this law.[4] The key question is whether the jury followed the instruction. Kueker contends it did not. He points out that the jury's award of $126,400 for future medical expenses is roughly equal to Gleason's past yearly medical expenses multiplied by her life

expectancy, less the costs of the chiropractic care that was no longer needed. The Gleasons respond that Kueker's attempt to parse the future medical expense award amounts to speculation. Both parties raise cogent arguments. To resolve their competing claims, we find it necessary to examine the theory and practice behind present value reductions of future damage awards.

**A. Theory.** Present value analysis is the method used to determine the value today of future losses or expenses. *See* Ward S. Curran, *Present Value Analysis in Estimating Damages in Torts,* 72 Connecticut B.J. 375 (1998). It accounts for the reality that "money has the power to earn money." Jacob A. Stein, 2 Stein on Personal Injury Damages § 6:16 (3d ed.1997). Plaintiffs can realize earnings through the investment of an advance lump sum award, which effectively overcompensates them for their injuries if the award is not discounted. *See Beaulieu v. Elliott,* 434 P.2d 665, 671 (Alaska 1967).

A countervailing consideration, however, is inflation, which devalues future damage awards. *Id.* at 671. The United States Supreme Court has recognized that "ours is not an inflation-free economy" and "anticipated price inflation . . . certainly affects market rates of return." *See Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 538, 103 S.Ct. 2541, 2551, 76 L.Ed.2d 768, 784 (1983). Therefore, the modern consensus is that present value reductions should take into account future inflationary pressures. In other words, the rate by

---

**3.** That provision states in relevant part:

2. In all personal injury actions where the plaintiff recovers a sum of money that, according to special verdict, is intended, in whole or in part, to address the future damages of the plaintiff, that portion of the judgment that reflects the future damages shall be adjusted by the court or the finder of fact to reflect the present value of the sum.

**4.** The jury was instructed that "present value" is "a sum of money paid now in advance which together with interest at a reasonable rate of return, will compensate the plaintiff for future economic losses."

which an award is discounted should be offset by an anticipated inflation rate. 22 Am.Jur.2d *Damages* § 144 (1988). Iowa recognizes this economic reality. *Schnebly*, 217 N.W.2d at 728; *see also Schmitt v. Jenkins Truck Lines, Inc.*, 170 N.W.2d 632, 658 (Iowa 1969) (upholding expert testimony on present value reduction which took into account both inflation and increased productivity of economy).

**B. Practice.** Although there is a growing consensus that anticipated inflation should be considered in a present value analysis, there is little agreement on the preferred methodology. *See* 22 Am.Jur.2d *Damages* § 143; 3 Stein on Personal Injury Damages § 15:11 (3d ed.1997). Courts generally have adopted one of three approaches: (1) the current dollar earnings and current interest rate or "inflate-discount" method; (2) the real earnings and real interest rate or "real interest rate" method; and (3) the "total offset" method. *See* Curran, 72 Connecticut B.J. at 377; Michael I. Krauss and Robert A. Levy, *Calculating Tort Damages for Lost Future Earnings*, 31 Gonzaga L.R. 325, 341 (1995–96). The first approach projects future damages with inflation built in. Curran, 72 Connecticut B.J. at 380; *O'Shea v. Riverway Towing Co.*, 677 F.2d 1194, 1200 (7th Cir.1982). The second approach projects damages without inflation and discounts those damages at an interest rate that does not have inflation built in (real interest rate). *Id.* The third approach assumes that the discount rate is completely neutralized or offset by the inflation rate. *Pfeifer*, 462 U.S. at 544, 103 S.Ct. at 2554, 76 L.Ed.2d at 787.

Our legislature has not mandated a particular approach to discount future awards to present value, nor has it prescribed a discount rate to be applied by the factfinder. *See* Iowa Code § 624.18. Therefore, we turn to case precedent.

Although our highest court has not explicitly mandated a particular methodology, it has affirmed the use of the total offset approach where there is evidence from which to conclude that the discount and inflation rates are the same. *Schnebly*, 217 N.W.2d at 728. Additionally, the court has rejected use of the legal rate of interest to reduce future damages to their present value, adopting instead the rate "found by the jury from the evidence to be fairly expected from reasonably safe investments which a person of ordinary prudence, but without particular financial experience or skill, could make in the locality." *Von Tersch v. Ahrendsen*, 251 Iowa 115, 121, 99 N.W.2d 287, 291 (1959). Finally, the court has reaffirmed its faith in the jury to make the present value reduction based on all the relevant facts and circumstances shown by the evidence. *Id.; see also Jenkins Truck Lines, Inc.*, 170 N.W.2d at 664 (noting juries could draw inferences from material matters shown); *Jackson v. Chicago, M., St. P. & P.R. Co.*, 238 Iowa 1253, 1267, 30 N.W.2d 97, 105 (1947) (noting jury's wide discretion in assessing personal injury damages, including discretion to consider lessened purchasing and earning power of money); *accord St. Louis, I.M. & S.R. Co. v. Needham*, 52 F. 371, 378 (8th Cir.1892) (noting "human ingenuity seems incapable of formulating a rule which shall specify every circumstance, chance, and probability that a jury may consider, and none that it may not ..."). While certain courts have questioned the wisdom of relegating such a complex economic calculation to a jury, others have noted that the use of economics in a litigation setting is in any event less than exact and the determination should be left to the sound discretion of the jury. *See Cox v. Crown CoCo*, 544 N.W.2d 490, 500 (Minn.Ct.App.1996); Florida Uniform Civil Jury Instruction 6.10, comment 2; *Cf. O'Shea*, 677 F.2d at

1201; 3 Stein on Personal Injury Damages, § 15:3. Iowa appears to have endorsed the "sound discretion" approach.

## IV. *Disposition*

Turning now to the facts of this case, it becomes evident that we must adopt the Gleasons' position. Although Kueker compellingly argues that the numbers reflect no present value reduction, to adopt his position would require us to speculate as to the jury's calculations. We decline to do so.

We must assume that the jury acted in accordance with its instruction and made a determination of present value. *Schwennen,* 471 N.W.2d at 887. The jury very well could have determined from Mary Gleason's medical billing records that the cost of medical care was rising at a higher rate than the prevailing interest rate, justifying a complete offset of the two and adoption of the approximate figure offered by Gleason. *See Burgess v. Mid–Florida Service,* 609 So.2d 637, 638 (Fl.Ct.App. 1992) (noting jury's failure to arrive at present value calculation smaller than future damages award did not necessarily prove failure to follow instructions but may

have been "consistent with an intentional determination that the present value is equal to future damages by application of a 'total offset' calculation.") In the alternative, the jury could have reduced Mary Gleason's $130,000 figure to $126,400 not because it was taking into account the assumptions suggested by Kueker, but because it believed inflation would not offset the discount rate. Because there was some evidence from which the jury could have made this present value determination, we conclude the future medical expense award should be affirmed. *See Miller v. Young,* 168 N.W.2d 45, 53 (Iowa 1969).

The district court did not abuse its discretion in denying Kueker's motion for new trial and did not err in rejecting his request for remittitur.

**AFFIRMED.**